UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

PETER DINOME,                                    :

                      Plaintiff,            :

             -against-                 :

THE CITY OF NEW YORK,                            :

                 Defendant.            :

------------------------------------------------------------x

       14 Civ. 9375 (AJP)

       **OPINION & ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Peter Dinome brings this action under the Jones Act, 46 U.S.C. § 30104, seeking compensation for a December 19, 2013 injury that he suffered in the course of his employment with the City of New York.  (Dkt. No. 2: Compl. at 2.)  Presently before the Court is Dinome's motion for partial summary judgment on the issue of his status as a seaman on the City Island Rescue Boat and the "Michael J. Cosgrove" vessel.  (Dkt. No. 20: Notice of Mot.)  The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 8.)  For the reasons set forth below, Dinome's motion is <u>DENIED</u>.

**FACTS**

        The following relevant facts are undisputed:

        Dinome began work for the City as a Hart Island deckhand in May 2013.  (Dkt. No. 22: Dinome Rule 56.1 Stmt. ¶ 3; Dkt. No. 29: City Rule 56.1 Stmt. ¶ 3.)  During Dinome's employment, Hart Island was operated by the City as a burial site for indigent and unknown decedents; City employees used the Cosgrove to reach the island, with each voyage commencing from and returning to City Island in the Bronx.  (Dinome & City Rule 56.1 Stmts. ¶¶ 26-27.)  The

Cosgrove would make between two and ten daily one-way passages between City Island and Hart Island, with no set schedule.  (Dinome & City Rule 56.1 Stmts. ¶ 31.)  Each trip lasted an average of ten minutes and traveled one half nautical mile.  (Dinome & City Rule 56.1 Stmts. ¶ 32.)  Dinome usually worked from 6:00 a.m. to 2:00 p.m., Tuesday through Friday.  (Dinome & City Rule 56.1 Stmts. ¶ 33.)  Dinome also participated in Rescue Boat drills once a week on orders from the Cosgrove captain.  (Dinome Rule 56.1 Stmt. ¶ 51 & City Stmt. ¶ 50.)[1/]

On December 19, 2013, Dinome alleges that he was injured while stowing the Rescue Boat after a drill.  (Dinome Rule 56.1 Stmt. ¶ 61 & City Stmt. ¶ 60.)  Dinome attempted to lift the Rescue Boat out of the water when the stern line "jumped off the shiv" causing the Rescue Boat to suddenly drop.  (Dinome Rule 56.1 Stmt. ¶ 63 & City Stmt. ¶ 62.)  At the time of Dinome's injury, the City owned and operated the Cosgrove and the Rescue Boat.  (Dinome & City Rule 56.1 Stmts. ¶ 4.)

## ANALYSIS

## I.   LEGAL PRINCIPLES

### A.   General Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 553 F. App'x 13, 14 (2d Cir. 2014); Connolly v. Calvanese, 515 F. App'x 62, 62 (2d Cir. 2013); Lang v.

---

[1/]   Paragraphs 44 through 66 of the City's Rule 56.1 response statement are incorrectly numbered.

Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 54 (2d Cir. 2013); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53; Dolan v. Cassella, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)). Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[2]

---

[2] See also, e.g., Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., 552 F. App'x 47, 49 (continued...)

The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

        In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

---

[2/]    (...continued)
(2d Cir. 2014); Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

II.     **DINOME'S STATUS AS A "SEAMAN" UNDER THE JONES ACT**

The Jones Act provides that a "seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104.  In order for Dinome to recover for his injuries under the Jones Act, he must prove that he was a "seaman" at the time of his injury as contemplated by the Act.  Dinome moves for summary judgment on this issue, claiming that he was a seaman aboard the Cosgrove and/or Rescue Boat at the time of his injury.  (Dkt. No. 20: Notice of Mot.)

A.      **"Seaman" Status Under the Jones Act**

Whether someone injured aboard a vessel is a "seaman" under the Jones Act presents a mixed question of law and fact.  McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356, 111 S. Ct. 807, 818 (1991).  The Jones Act does not define the term "seaman."  Chandris, Inc. v. Latsis, 515 U.S. 347, 355, 115 S. Ct. 2172, 2183 (1995).  The analysis focuses on the employee's overall relationship to the vessel, rather than his activities at the time of the injury or the location of the injury alone.  Id. at 359-60, 115 S. Ct. at 2185.  The Supreme Court has rejected such a "'snapshot'" test because "'a more enduring relationship is contemplated.'"  Id. at 363, 115 S. Ct. at 2187.  Land-based workers do not become seamen when injured on a vessel, and seamen do not forfeit Jones Act protections when their duties take them ashore.  Id. at 361, 115 S. Ct. at 2186.

To qualify for seaman status, "an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission."  Id. at 368, 115 S. Ct. at 2190 (quotations omitted).  An employee also must "have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."  Id.  In terms of duration, the Supreme Court has endorsed a "rule of thumb"–a "worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman

5

under the Jones Act."  Id. at 371, 115 S. Ct. at 2191; see also, e.g., Daza v. Pile Found. Constr. Co.,

983 F. Supp. 2d 399, 410 (S.D.N.Y. 2013) (plaintiff not a seaman where the "percentage of time [he]

spent on seaman-related work [was not] even close to the 30% guideline set by the Supreme Court

in Chandris"); Quiles v. City of N.Y., 978 F. Supp. 2d 374, 383-84 (S.D.N.Y. 2013) (citing the

Chandris rule that "a person is assumed not to be a Jones Act seaman if he spends less than thirty

percent of his work time aboard a ship"); Casser v. McAllister Towing & Transp. Co., 10 Civ. 1554,

2010 WL 5065424 at *3 (S.D.N.Y. Dec. 7, 2010) ("In order to satisfy the temporal component, the

general rule of thumb is that the plaintiff must spend at least 30% of his time working on a vessel

that is in navigation.").  This figure, however, is "no more than a guideline" from which a court may

depart in the appropriate case.  Chandris, Inc. v. Latsis, 515 U.S. at 371, 115 S. Ct. at 2191; see also,

e.g., Guarascio v. Drake Assoc. Inc., 06 Civ. 15185, 2008 WL 4222034 at *2-3 (S.D.N.Y. Sept. 15,

2008) (denying defendant summary judgment where plaintiff was "only 7.75 'Jones Act' hours shy

of the 30 percent mark," and noting that "30 percent is merely a guideline, not a bright line cutoff").

        "The inquiry into seaman status is of necessity fact specific; it will depend on the

nature of the vessel and the employee's precise relation to it."  McDermott Int'l, Inc. v. Wilander,

498 U.S. at 356, 111 S. Ct. at 818.  If reasonable persons could differ as to whether the plaintiff was

a seaman, the question should be presented to the jury.  Id. at 356, 111 S. Ct. at 818.[3/]  Nevertheless,

---

[3/]    See also, e.g., In re Bridge Constr. Servs. of Florida, Inc., 39 F. Supp. 3d 373, 388 (S.D.N.Y.
2014) (acknowledging that "the inquiry is necessarily fact-intensive and is usually reserved
for the fact-finder"); Catanzaro v. Ne. Remsco Constr., Inc., No. 11-CV-4903, 2014 WL
1271206 at *4 (E.D.N.Y. Mar. 26, 2014) ("Based on the evidence in the record, the Court
cannot resolve this question at this stage.  Rather, the answer to this contested factual issue
turns heavily on the relative weight accorded to certain evidence and the evaluation of the
credibility of the parties' competing claims."); Vasquez v. McAllister Towing & Transp. Co.,
12 Civ. 5442, 2013 WL 2181186 at *3 (S.D.N.Y. May 16, 2013) ("Resolution of these
questions is typically reserved for the jury."); Ocello v. City of N.Y., No. 05-CV-3725, 2012
(continued...)

summary judgment is appropriate where the law and facts support a single conclusion. <u>Harbor Tug & Barge Co.</u> v. <u>Papai</u>, 520 U.S. 548, 554, 117 S. Ct. 1535, 1540 (1997); <u>see also</u>, <u>e.g.</u>, <u>O'Hara</u> v. <u>Weeks Marine, Inc.</u>, 294 F.3d 55, 63 (2d Cir. 2002) (affirming dismissal of Jones Act claim where plaintiff was a dockbuilder who "spent more than half his working hours during a five-month period aboard the barges, but he spent all of that time performing tasks related to repair of the Staten Island pier, while the barges were secured to the pier"); <u>Sologub</u> v. <u>City of N.Y.</u>, 202 F.3d 175, 180 (2d Cir. 2000) (affirming summary judgment for the City where plaintiff "served only one eight-hour tour aboard a vessel, hardly enough to meet the 'duration' test promulgated by the Supreme Court" in <u>Chandris</u>); <u>Rivera</u> v. <u>Arctic Ocean Shipping Ltd.</u>, No. 09-CV-4672, 2012 WL 1004840 at *4-5 (E.D.N.Y. Mar. 23, 2012).

### B.    Dinome's Seaman Status

In support of his motion, Dinome describes a host of duties he performed aboard the Cosgrove, which the City largely admits.  (Dkt. No. 22: Dinome Rule 56.1 Stmt. ¶ 45; Dkt. No. 29: City Rule 56.1 Stmt. ¶ 44.)   Dinome further claims that he spent an average of six hours (or approximately seventy-five percent) of his workday on the vessel.  (Dinome Rule 56.1 Stmt. ¶ 45; <u>see also</u> Dkt. No. 23: Dinome Aff. ¶ 16.)  Dinome argues that the Cosgrove's travel log is misleading because it does not include the time he spent working aboard the Cosgrove while the ship was moored, or account for the Rescue Boat drills.  (Dkt. No. 35: Dinome Reply Br. at 1-4; <u>see</u> page 2 above.)

---

[3]/     (...continued)
WL 4511262 at *4 (E.D.N.Y. Sept. 28, 2012) ("In sum, there are material facts clearly in dispute as to the duration and nature of [plaintiff's] work, and it is not the Court's role to resolve them here.").

The City argues that summary judgment should be denied because a factual dispute exists as to whether Dinome had an adequate temporal connection to the Cosgrove. (Dkt. No. 28: City Opp. Br. at 1.) The City claims that the Cosgrove's log and testimony from ship's crew contradict Dinome's claim regarding the amount of time he spent in the service of the vessel, which the City contends amounts to less than the thirty percent threshold set forth in Chandris. (City Opp. Br. at 2, 14-15; see pages 5-6 above.)

At the time of Dinome's injury, Marc Oettinger was the Cosgrove's port mate, and Mihai Pasalau was the captain. (Dkt. No. 32: David Aff. Ex. C: Oettinger Aff. ¶ 1; David Aff. Ex. D: Pasalau Aff. ¶ 1.) Oettinger and Pasalau aver that when the Cosgrove was docked at Hart Island, Dinome had no duties aboard the Cosgrove and was under no obligation to remain on the vessel. (Oettinger Aff. ¶ 3; Pasalau Aff. ¶ 10.) Nor did Dinome have any duties aboard the Cosgrove prior to its first voyage of the day. (Pasalau Aff. ¶ 16.) According to Oettinger and Pasalau, Dinome did not handle lines aboard the Cosgrove upon departing City Island or assist in fueling the ship, and it only took about two minutes to disembark any vehicles on board. (Oettinger Aff. ¶¶ 4, 6-7; Pasalau Aff. ¶¶ 11, 13-14.) During the weekly Rescue Boat drills, the boat was lowered into the water for ten to fifteen minutes and then raised up again to the City Island Pier. (Pasalau Aff. ¶ 8.)

Oettinger and Pasalau further claim that Dinome did not spend six hours per day aboard the Cosgrove; rather, they assert, Dinome's time on the vessel is reflected in the vessel log prepared by Pasalau. (Oettinger Aff. ¶ 8; Pasalau Aff. ¶¶ 15, 19.) The log contains the Cosgrove's travel times between City Island and Hart Island, including certain shore-side duties such as lowering and fastening the Cosgrove's bridge. (See Pasalau Aff. ¶ 19; David Aff. Ex. H: Pasalau Dep. at 42-44; David Aff. Ex. J: Cosgrove Log.) The log indicates that the Cosgrove voyages accounted for approximately seven to twenty-three percent of Dinome's eight-hour workday in the

two months prior to his accident.  (City Opp. Br. at 6-8; David Aff. Ex. J: Cosgrove Log; David Aff.

Ex. K: November 2013 Chart; David Aff. Ex. L: October 2013 Chart.)

There are material facts in dispute that prevent summary judgment in Dinome's favor.

Dinome's claim that he spent approximately seventy-five percent of his workday aboard the

Cosgrove is contradicted by the ship's log and the Pasalau and Oettinger affidavits.  (See pages 7-8

above.)  Dinome argues that the Cosgrove log is incomplete, but, at least with regard to several of

his duties, the record evidence does not establish which were performed while the vessel was in

transit (and thus covered by the ship log), and which were performed while the ship was docked.

The Court acknowledges that time spent on a vessel while moored should not necessarily be

excluded from the temporal analysis. See, e.g., Stewart v. Dutra Constr. Co., 543 U.S. 481, 494, 125

S. Ct. 1118, 1127 (2005) ("A ship and its crew do not move in and out of Jones Act coverage

depending on whether the ship is at anchor, docked for loading or unloading, or berthed for minor

repairs, in the same way that ships taken permanently out of the water as a practical matter do not

remain vessels merely because of the remote possibility that they may one day sail again."));

Vasquez v. McAllister Towing & Transp. Co., 12 Civ. 5442, 2013 WL 2181186 at *4 n.8 (S.D.N.Y.

May 16, 2013) ("Where, as here, a vessel is temporarily moored, it is 'in navigation' for the purposes

of the Jones Act.").  Yet even assuming that Dinome performed additional duties not included in the

log (see Dinome Reply Br. at 2-3), the duration of these tasks is unclear.  See, e.g., Vermont Teddy

Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) ("It is the movant's burden to

show that no genuine factual dispute exists. . . .  [W]e must resolve all ambiguities and draw all

reasonable inferences in the non-movant's favor."); see also cases cited at pages 2-4 above.  This

factual dispute is further highlighted by the City's contention that Dinome had no duties before the

Cosgrove's first voyage of the day or at Hart Island while docked.  (See page 8 above.)  The City

also discounts the duration of certain tasks.  For example, Pasalau claims that it took about two minutes to disembark the vehicles from the Cosgrove and between ten and fifteen minutes to perform the weekly Rescue Boat drill.  (See page 8 above.)

Dinome certainly is correct that departure from Chandris' thirty percent rule of thumb may be justified in the appropriate case considering "the total circumstances of" a worker's employment.  Chandris, Inc. v. Latsis, 515 U.S. 347, 370, 115 S. Ct. 2172, 2190 (1995).  But it also is true that a "maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are."  Id. at 371, 115 S. Ct. at 2191; see, e.g., Sologub v. City of N.Y., 202 F.3d 175, 180 (2d Cir. 2000) (Plaintiff "was engaged in land-based duties between September 26, 1995 and February 22, 1996.  During that period, he served only one eight-hour tour aboard a vessel, hardly enough to meet the [Chandris] 'duration' test."); see also cases cited at pages 5-6 above.  A plaintiff's seaman status generally is a jury question; such is the case here given the factual disputes at issue.  See, e.g., Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 554, 117 S. Ct. 1535, 1540 (1997) ("it often will be inappropriate to take the question from the jury" unless "'the facts and the law . . . reasonably support only one conclusion.'"); see also cases cited at page 6 n.3 above.[4]

---

[4]   Dinome's reliance (Dkt. No. 21: Dinome Br. at 1-2, 4; Dinome Reply Br. at 4-6) on Mulholland v. City of N.Y., 565 F. App'x 35 (2d Cir. 2014), is misplaced.  In Mulholland, the plaintiff was a maritime worker injured in the course of his employment, who prevailed in a jury trial on his Jones Act claim.  Id. at 36.  The City appealed from the denial of its Federal Rule of Civil Procedure 50 motion, arguing that the jury could not have concluded, as a matter of law, that the plaintiff was a seaman at the time of his injury.  Id. at 36.  The Second Circuit held that the jury was entitled to credit the plaintiff's testimony regarding his duties onboard the vessel and upheld the verdict.  Id. at 37.

The Second Circuit in Mulholland was presented with an entirely different procedural posture than that of the instant matter.  The Court only had to determine whether there
(continued...)

## **CONCLUSION**

For the reasons set forth above, Dinome's motion for partial summary judgment is

DENIED.  The Court will hold the final pretrial conference on June 8, 2016 at 2PM in courtroom

20D, 500 Pearl Street.

SO ORDERED.


Dated:          New York, New York
                May 31, 2016


_____
**Andrew J. Peck**
United States Magistrate Judge


Copies to:      All Counsel (ECF)

---

4/          (...continued)
          existed "such a complete absence of evidence supporting the verdict that the jury's findings
          could only have been the result of sheer surmise and conjecture, or . . . such an
          overwhelming amount of evidence in favor of the movant that reasonable and fair minded
          men could not arrive at a verdict against him."  Id. at 36 (quotations omitted).  Mulholland
          does not compel the conclusion that Dinome was a seaman as a matter of law, which, he
          acknowledges, is a question for the jury unless the facts support a single conclusion.
          (Dinome Br. at 3.)